JOHN G. HORMEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BENJAMIN F. HORMEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

O. W. O'BERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 34765–34767, 44967–44969, 55631, 55632.

Promulgated February 29, 1932.

*R. C. Alderson, Esq.*, for the petitioners.
*J. M. Leinenkugel, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent has asserted deficiencies in income taxes for the years and in the amounts as follows:

| Name | Year | Amount |
|---|---|---|
| Benjamin F. Hormel | 1925 | $91.91 |
|  | 1926 | 217.35 |
|  | 1927 | 163.84 |
| John G. Hormel | 1925 | 81.00 |
|  | 1926 | 61.44 |
| O. W. O'Berg | 1925 | 61.14 |
|  | 1926 | 77.42 |
|  | 1927 | 452.09 |

The deficiencies arise from the respondent's determination that amounts received by the petitioners on "operators' shares" in the Hormel Trust constitute income taxable at both the normal and surtax rates.

George A. Hormel and Jay C. Hormel, who were the principal stockholders of George A. Hormel and Company, a Minnesota corporation, hereinafter referred to as the Company, transferred 14,410 shares of common stock of the Company in trust for the purpose, as stated in the trust instrument, of providing a plan whereby the Company might continue after the death of the two principal stockholders, George A. and Jay C. Hormel, and to permit

the active managers of the business to share in the earnings of the Company. Under the provisions of the trust, each holder of common stock of the Company might transfer his shares of stock to the trustee in exchange for a founders' certificate in the trust. The trust was governed by an advisory board of seven members, but during his lifetime George A. Hormel could cast the deciding vote of such board. After him, Jay C. Hormel had the deciding vote and, thereafter, a majority vote governed. George A. or Jay C. Hormel could terminate the trust at any time by notice in writing to the trustees and to the holders of founders' certificates, whereupon each founder would receive the proportionate share of the corpus which he contributed. From the income of the trust, which consisted of dividends from the Company, the holders of founders' certificates were to receive 5 per cent per annum on the net book value of the stock as of November 1 each year. If no dividend was declared on the stock, or if less than 5 per cent was paid, the trustee should issue a certificate of indebtedness for the unpaid amount due on the founders' certificates. Beyond 5 per cent, the founders' certificates had no right to participate in the income of the trust, except as they received operators' shares.

Under the direction of the advisory board, the trustee issued operators' shares entitling the holder to participate in the income of the trust to the extent of the units received. Operators' shares were distributed by the advisory board to those actively engaged in the business of the company, according to the board's opinion of the services rendered to the Company. Operators' shares were nontransferable and all rights thereunder ceased upon termination of the services of the holder, either voluntarily or involuntarily, except that such holder was entitled to his allotment up to the time his services ended. When an operator's share was canceled, the trustee issued in lieu thereof a redemption certificate entitling the holder to a sum equal to his pro rata share in the net increase in the book value of the common stock since the date of issuance of the operators' share.

The trust instrument provided that income should be distributed each year as follows: *first*, the holder of each founders' certificate should receive 5 per cent on the book value of the common stock; *second*, each holder of a certificate of indebtedness should have such certificate paid with interest thereon at 5 per cent per annum; *third*, interest at 5 per cent per annum should be paid on outstanding redemption certificates; *fourth*, each member of the advisory board and the trustee should be paid one-fourth of one per cent on the increase in the book value of and the amount of dividends on the common stock; *fifth*, the trustee should then set aside an amount, not

exceeding 10 per cent of the balance of the dividends, as a reserve fund; and, *sixth*, the balance of the net income of the trust should be distributed pro rata among the holders of operators' shares. Upon the termination of the trust, the corpus was to be divided ratably among the holders of founders' certificates.

The petitioners are holders of founders' certificates and operators' shares of the Hormel trust. During the taxable years they received distributions on their operators' shares as follows:

| Name | Year | Amount |
|------|------|--------|
| Benjamin F. Hormel | 1925 | $5, 226. 00 |
|  | 1926 | 5, 226. 00 |
|  | 1927 | 5, 226. 00 |
| John G. Hormel | 1925 | 5, 310. 00 |
|  | 1926 | 5, 310. 00 |
| O. W. O'Berg | 1925 | 3, 000. 00 |
|  | 1926 | 3, 000. 00 |

In 1927 the petitioner, O. W. O'Berg, severed his relation with the Company, surrendered his operators' shares and received in lieu thereof $10,321.87 in cash and a redemption certificate. The respondent has included the cash received as taxable income for such year.

Since the trust was revocable at any time by either of the two original founders, the dividends on stock which they contributed are taxable to them individually under the following provisions of section 219 (g) of the Revenue Act of 1926:

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

Others who contributed stock to the trust had no power of revocation, and the income from such property is taxable under section 219 to the trustee or to beneficiaries, depending upon the distribution of the income under the trust instrument. There can be little doubt that some portion of the income received by petitioners on their operators' shares is nontaxable, as being income constructively donated to the trust by George A. and Jay C. Hormel, who have paid income taxes thereon (see *Elnora C. Haag*, 19 B. T. A. 982), but we can not determine from the record in this proceeding how much, if any, of such income was distributed to the petitioners. We do not know the relative contributions of stock by the two original trustors and by others, who later became founders. Neither do we know the dividends paid in each year, the amount set aside as surplus by the trustee, the com-

pensation paid to the trustee and members of the advisory board, nor the relative distribution of operators' shares, all of which, we think, are necessary to a solution of this tax problem.

It is almost certain that some part of the income received by the petitioners was subject to tax, namely, that part which represented income received by the trustee from property contributed by those founders who had no power to revoke. Certainly such income is taxable either to the trustee or to the beneficiaries under section 219. We think the evidence is insufficient to overcome the respondent's determination that the amounts received by petitioners should be included as a part of their gross income.

The petitioners contend that for the purpose of the normal tax they are entitled to credit as provided in section 216 (a) of the Revenue Act of 1926 for dividends received from a domestic corporation. For the same reasons as stated in our discussion of the first point, we think petitioners have failed to show that they are entitled to the credit claimed. That part of the trust income arising from property contributed by George A. and Jay C. Hormel, whose power to revoke made such income taxable to them, came to the trustee as a constructive donation and not as dividends of a domestic corporation. Those two individuals, who must pay the tax on such income, are entitled to the credit allowed by section 216 (a). The petitioners rely on the following provisions of section 219 (d) of the Revenue Act of 1926:

If any part of the income of an estate, or trust, is included in computing the net income of any legatee, heir, or beneficiary, such legatee, heir, or beneficiary shall, for the purpose of the normal tax, be allowed as credits, in addition to the credits allowed to him under section 216, his proportionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are, under this section, required to be included in computing his net income. Any remaining portion of such amounts specified in subdivisions (a) and (b) of section 216 shall, for the purpose of the normal tax, be allowed as credits to the estate or trust.

We can not believe that Congress intended that such credit should be allowed more than once in respect of the same income. Since we do not have the necessary facts showing stock contributions, dividends paid, the amount set up as surplus and the relative distributions on operators' shares, we are unable to determine what part of the income distributable to petitioner was received by the trust as dividends from domestic corporations and, accordingly, the respondent's determination must be approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*